Thank you. May it please the court. Jocelyn Hunt with the Federal Defenders of Montana, representing Mr. David Crosby in this matter. Mr. Crosby's defense before the trial court and before the jury was that he did not knowingly fail to register as a sex offender. The government's case, and key to it, was that he had received advice from Stephanie Harmon, who was an employee with the Fort Morgan Police Department, that he was to, within 24 hours of traveling to another jurisdiction, check in with that jurisdiction to determine whether he needed to register there as well. He was more than just passing through, right? He got a job that lasted, what, eight weeks? Seven to eight weeks, you're correct. He registered his stepdaughter or his girlfriend's daughter in school, correct? Correct. Signed a two or three month lease with a landlord? The lease was month to month. Okay. So what, what's, and he's been told all along that he has to register. What's the problem? He was told in Colorado that he needed to register and did so every 90 days. He was to talk with the Sheriff's Department and give them that address and he did that as well. What happened in Montana was in traveling to New York, his car broke down and he had no money. He needed to get a job and he needed that time in order to pay for the part for his vehicle. When he initially registered under SORNA in Colorado, he signed a series of forms, didn't he? He did. Okay. And didn't that tell him that any time he was in a jurisdiction for any length of time, he had to register? I believe it did. However... So even if we ignore the testimony of Ms. Harmon, there's substantial evidence that he was aware of the registration requirement, right? I don't believe there is substantial evidence that he was aware of it. He did what he needed to do in Colorado to try to find out what he needed to do if he was traveling. And key to that was asking what needed to be done. Stephanie Harmon indicated that she had told him to register or check in within 24 hours of entering another jurisdiction. He testified that he did not receive that advice. And the agent who also spoke to Stephanie Harmon also indicated that he, even though Stephanie Harmon indicated she had told Mr. Crosby that advice, he did not have that in his notes. So that was a key piece of evidence, the actual key piece of evidence for the jury to consider whether he actually knowingly failed to register. Because if the jury believed that he hadn't received that advice, he wouldn't have done... that he didn't act intentionally or voluntarily. I think that that goes to the knowing element. And that was for the jury to find. And then we leap forward to the closing argument where the prosecutor in closing argument indicated that Stephanie Harmon had no motivation to vote, that she could be believed... Is that what the prosecutor said in closing? That she had no dog in the fight. That, meaning that... Well, there's got to be some leeway for the prosecutor to comment on credibility given the credibility instruction, right? I agree with that, Your Honor. Yeah. So what is it exactly in what the prosecutor said in closing that you think was vouching? The problematic piece was the dog in the fight, and then in rebuttal when he indicated that it is reasonable for the jury to believe that she actually said what she testified to, and that is that she gave that 24-hour directive. So when the prosecutor says, after saying, here's some reasons why I doubt the credibility, when the... as soon as the prosecutor says it would be reasonable for you to believe that, that's vouching? That is correct. I thought vouching was, I, the prosecutor, believe it. He indicated that the jury should believe her... the prestige of her employment at the police department, her authority in registering sex offenders. Well, but here's my problem. Vouching's always kind of tricky because the prosecutor's obviously trying to persuade the jury to believe the testimony that comes in on the prosecutor's We all get that. And the prosecutor's allowed to give to the jury or recite to the jury the reasons why the testimony might plausibly be doubted, you know. He got a good deal for testifying and so on and so forth. And what the prosecutor's not allowed to do, so I'm now going on the far side of the line, the prosecutor's not allowed to say, and I believe this, I've been around for a hundred years doing these cases, I believe that witness. Prosecutor can't say that. But why can't the prosecutor say, well, here are all the reasons why I suggest you could think that she's telling the truth and it would be reasonable for you to attach importance to those reasons. Why can't he say that? Because in doing so, as he did here, he linked up what is for the jury to decide, that she is to be believed, that she actually gave that 24-hour directive. He stated, it is very reasonable, I submit, to believe that. Ms. Harmon did, in fact, tell him that. I think that's your strongest piece right there. And that is where, again, he made for the jury a determination that is just for the jury to do, to assess which weight to give Ms. Harmon's testimony. If I'm parsing this as a lawyer or as a judge, he's just reciting the standard, that is to say, is there enough evidence here to convict, would it be reasonable for the jury to say, he's not saying you should. Now, it may be that the jury hears that a little differently than a lawyer would hear that. I don't believe that that is true. I think that they, by hearing that it's reasonable for them to believe her, and not just because she gave that directive, but also because it's her job. It's her job, that's what it entails. But that's back into reasons why they can or should or should not, could or could not decide to believe it. That's just back into, okay, here's some reasons that bear up on whether you could or could not believe it. I mean, that's perfectly permissible to say. I still think that in this case, he did cross the line by buttressing that she is a police department person and that she does have some dog in the fight to give improper testimony or incorrect testimony. Here's what he says precisely, so maybe we can look at that. Prosecutor talks about the jury instruction number 19. And it gives you several things to take into account when evaluating credibility, like memory, manner, interest in the outcome, bias, prejudice, contradiction of testimony, etc. So, so far, he's on clean ground, is that right? When he's explaining or reciting what the jury instruction says. I think that that's proper to recite what the instruction says. Okay. Then, he goes on to say, like I mentioned before, it doesn't matter for Stephanie Harmon whether David Crosby did or did not violate the law here. Any problem with that? I don't see a problem with that. Okay. She's not the one on trial. She's not on the hook for anything. And then he says, imagine what the motivation or bias or prejudice is. So he's still on clean ground, right? I think he's walking a fine line, especially given that Mr. Crosby has a presumption of innocence. But I can go with that that is still in line with the instruction. And then when he goes on to say her job is to counsel sex offenders, that's a factual statement, right? And to tell them what the requirements are. That's a factual argument, correct? That is correct. So it's only when he says that it's reasonable that she did, in fact, tell him that. That's where it crosses the line. Yes, I agree with you, Your Honor. Thank you. Do you want to save the remaining time for rebuttal? Sure. Thank you. May it please the Court, Tim Tatarka of the District of Montana on behalf of the United States. I would just start one sentence earlier with respect to Judge McCune's recitation of the prosecutor's statement. Immediately before reading the jury instructions to the jury in his closing arguments, the prosecutor makes clear it is your responsibility to evaluate the credibility of the witnesses. So all of this is in the context of proffering for the jury the government's argument towards what those bounds are, the tools that the court gave the jury with respect to their determination in order to make a credibility determination. And as Judge McCune and defense counsel walked through the arguments, reading through the jury instructions, arguing from those elements, the prosecutor walked through that line. With respect to that last statement, the prosecutor says, It is very reasonable, I submit, to believe that Mr. Harmon did in fact tell him when that's what she testified to and that's what her job entails. That I submit language is a language that this Court has indicated it's a preference for in terms of proffering, asking the jury to make a But the magic words I submit don't save any sentence. If the prosecutor were to say, I've been a prosecutor for a hundred years and I believe him and I submit you should too, the I submit doesn't save it. No, absolutely. And I agree with that a hundred percent. But that isn't what he said there. I'm telling you, in my view, the I submit doesn't help you a bit. Well, the reason I bring it up, it is something this Court has noted before and I bring it up in particular because that's the only place where there's an I. The I isn't, there isn't an I believe or I understand him. The only time when the jury, when the prosecutor put himself involved at all was only in that careful cabining language. Was there an objection to these arguments? There was not. So we're here on plain error. That's correct. And that's relevant. The government's position is this isn't vouching to any degree. But certainly it isn't vouching to the extent that would implicate plain error review in this case. This Court looks at a number of different factors in terms of determining whether or not it's close to vouching, that it's close to plain error. There's no indication here that the prosecutor was relying on evidence outside of the record. There's no indication here that the prosecutor was putting forward his own beliefs. There's no indication here that the government was either indicating that either the government or the Court was somehow monitoring anyone's truthfulness. Those are the factors that this Court has looked at. And to go to the point that Judge Hawkins addressed earlier, in terms of the weight of the evidence, the failure to register under SORNA is not a, it's a general intent crime. It's not a crime that requires willfulness, that requires as an element that the defendant knew this particular, the ins and outs of this particular statute, only that he acted knowingly in the sense that his actions were voluntary and not accidental. It's undisputed that he traveled from Colorado to Montana, that he resided there for at least 80 days, that he got a job, et cetera. All of that is sufficient. The fact that his intention in doing so, even if you credit his statement, his intention in doing so was his belief that he had longer to register, that avails him no more than a speeder who travels into a school zone or a construction zone might say, I didn't know that I passed into that zone and the speed limit went down. So even looking at the strength of the case, even crediting him, there was still plenty of evidence to convict. If the court has no further questions, the government rests. Thank you. So I'd like to address the context again of when this statement came in. And if you, since we have gone through the context of it, leading up to it, we have, as we've gone through, we get to the point where the jury could then understand that there to be believed Ms. Harmon actually gave that directive. That context leads up to his statement that it is reasonable for them to believe that she actually did this. And that is where the improper vouching occurs because that is the issue in the case and the determinative of whether he actually knowingly failed to register. So on a plein air standard, I don't believe that this is a harmless error. It does affect the fairness of his trial because that is the issue for the jury to decide. He decided it for them. He concluded it for them by asking them to believe Ms. Harmon over Mr. Crosby. If there are no further questions. Further questions? Thank you. Thank you, Ms. Hunt. Thank both counsel for coming this morning from Montana. The case of United States v. Crosby is submitted.
judges: Hawkins, McKeown, W. Fletcher